UNITED STATES of America,

v.

Carlos Ivan LLERA PLAZA, Wilfredo Martinez Acosta, and Victor Rodriguez, Defendants.

Nos. CR. 98–362–10, CR. 98–362–11, CR. 98–362–12.

United States District Court, E.D. Pennsylvania.

Jan. 9, 2002.

Thomas R. Perricone, U.S. Attorney's Office, Philadelphia, PA, David H. Resnicoff, Office of U.S. Attorney, Philadelphia, PA, for U.S.

Jules Epstein, Kairys & Rudovsky, Philadelphia, PA, Jose A. Muniz, New York City, Timothy J. Sullivan, Sullivan & Sullivan, College Park, MD, for Carlos Ivan Llera Plaza.

Michael Giampietro, Krasner & Restrepo, Philadelphia, PA, L. Felipe Restrepo, Krasner & Restrepo, Philadelphia, PA, for Wilfredo Martinez Acosta.

Gerald A. Stein, Philadelphia, PA, Philip J. Degnan, Law Offices of Philip J. Degnan, Philadelphia, PA, Bernard L. Siegel, Philadelphia, PA, for Victor Rodriguez.

## OPINION

POLLAK, District Judge.

1. On August 22, 2001, the defendants filed a Motion to Bar the Death Penalty Due to Racial Discrimination. The gravamen of the motion was set forth in the opening paragraphs of the supporting memorandum of law:

> Defendant Llera–Plaza, on his behalf and on behalf of his codefendants, moves to bar application of the death penalty in the instant matter. As Mr. Llera–Plaza has set forth in the attached Motion, and as will be proved at an evidentiary hear-

ing on this Motion, the Eastern District of Pennsylvania has been the locus of two multiple-defendant, multiple-murder victim federal prosecutions—the instant case and *United States v. Merlino et al.*

There is no rational basis for differentiating the two cases in terms of whether to seek the death penalty. Each involved an allegation of a corrupt, criminal organization; each involved a claim that, to further the ends of that organization, murders wer [sic] committed; each involved a killing of rivals; each involved at least one killing in a public location.

Indeed, it could be argued that the Merlino matter was a more serious series of offenses. The murders were but a part of the alleged history of using violence to further the aims of the organization; the murders were committed by persons with prior criminal records; and the murders were committed by an organization that was alleged to have existed over a greater period of time and had a more pervasive influence on the community. The Merlino case also involved allegations of at least one murder in another district (the Sodano murder in New Jersey) and a claim of drug trafficking. Finally, the criminal records of the defendants in the Merlino indictment were more extensive than the records of the defendants herein, and included violent crime activity and drug trafficking.

To say the least, the two sets of defendants were therefore "similarly situated," as that term is applied in the equal protection analysis decisional law. What served to set them apart, exclusively, was race.

Def. Mem. Law in Support of Def. Llera–Plaza's Mot. to Bar the Death Penalty at 1–2.[1] The defendants in this case are "Hispanic, having been born in Puerto Rico," Def. Mot. para. 1, and deem themselves persons of color, whereas the *Merlino*. defendants are Caucasians of Italian descent.

2. On September 14, 2001, the government filed an Opposition to Defendants' Motion to Bar the Death Penalty Due to Alleged Racial Discrimination. The government contended, in reliance on *United States v. Armstrong*, 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), that to prevail in a challenge to the government's decision to seek the death sentence, a defendant "must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *Id.* at 465, 116 S.Ct. 1480 (quotations omitted). The government further contended that the defendants' invocation of *Merlino* as an assertedly similar case was flawed as a matter of law. According to the government, the fact that *Merlino* was tried in this district did not serve to make it a more appropriate case with which to compare the case at bar than any other criminal case tried in any other district in the United States. The government also contended that "[t]o the extent a comparison with the *Merlino* case is germane at all, defendants have not begun to meet their burden of showing that they are situated similarly to the *Merlino* defendants." Gov't Opp'n at 11. In the government's view:

> The defense has mustered no comparative analysis of the aggravating and

---

1. In *Merlino,* the death-eligible offenses (for which the death penalty was not sought) were 18 U.S.C. § 1959 ("Violent crimes in aid of racketeering activity") offenses. In the case at bar, the death-eligible offenses (for which the death penalty is sought) are 18 U.S.C. § 1958 ("Use of interstate commerce facilities in the commission of murder-for-hire") and § 1959 offenses.

mitigating factors that exist in each of their cases and in each of the *Merlino* defendant's cases. Nor have they addressed prosecutorial considerations that may exist in the two cases, such as, *inter alia,* the role of each individual in their respective criminal enterprises, the quality and quantity of the evidence relevant to both the determinations of guilt and the statutorily mandated determinations that necessarily underlie any capital sentencing decision, and cooperation of equally or more culpable coconspirators. Without such a showing, no conclusion can be drawn about whether the court truly is comparing apples.

Even a brief foray into possible reasons for different treatment of the defendants in the two cases shows why topical analysis of the indictments is an insufficient basis for the allegations that defendants make and the relief that they seek. For example, one of the statutory mitigating factors is whether an equally culpable person in the case is not facing the death penalty. In *Merlino,* the government introduced evidence that Ralph Natale ultimately approved the charged murders and that he had a cooperation agreement with the government. Thus, in *Merlino,* there was an equally or more culpable defendant who did not face the death penalty.

In this case, there is no such other defendant. Here, the government's evidence is that Rodriguez ordered, authorized and contracted for the killings, that Llera Plaza directly participated in four of the murders and Martinez Acosta was the triggerman in three. There is no equally or more culpable person who does not face the death penalty. This alone is a sufficient race-neutral reason to justify different treatment between the defendants here and the *Merlino* defendants.

. . . .

Should this court find it necessary to compare indictments here, the distinctions are readily obvious. In this case, Rodriguez is charged with running an organization that sold millions of dollars of retail level crack and cocaine. It alleges that he hired a hit-team, which included Llera Plaza and Martinez Acosta, to assassinate two rival drug dealers, Jose Hernandez and Jorge Martinez. It alleges in the course of the conspiracy to murder Rodriguez's rivals, Martinez Acosta and Llera Plaza mistakenly shot to death Ricky Velez as he sat in Jose Hernandez's car in San Lorenzo, Puerto Rico; that, knowing of their mistake, they then flew to Philadelphia and shot to death Jorge Martinez, as well as his 17 year old nephew, Luis Garcia, who happened to be sitting next to him in a car on Frankford Avenue; and that Llera Plaza ultimately caused the shooting death of Jose Hernandez while he stood in the doorway of his house on Lawrence Street in Philadelphia.

While the *Merlino* indictment may be similar in the broadest sense because it alleges that murders were committed in furtherance of a criminal enterprise, the similarities stop there. It does not allege that defendants murdered one of the victims by mistake. It does not allege that the defendants, knowing of their mistake, traveled to another jurisdiction to hunt down their target. It does not allege that a juvenile bystander was shot to death in the course of murdering their intended victim. And it does not allege that, after killing two people whose murder they had not contracted for, that they continued to hunt down their remaining intended victim and finish him off. These are more than enough differences to distinguish the two cases.

*Id.* at 13–17. Having argued that *Merlino* and the case at bar are not sufficiently similar to establish any racially discriminatory effect, the government went on to argue that the defendants had also not proffered any evidence of a racially discriminatory purpose.

3. After further intervening submissions (docket entries 459, 464, 476, and 478), the defendants, on October 9, 2001, filed a Motion to Compel Discovery from Government of Information to Disclose and/or Determine the Impermissible Considerations of Race in the Decision by the Department of Justice to Select These Three Defendants to Face the Death Penalty.

4. After further intervening submissions (docket entries 493 and 496), in which the government contended that the defendants had failed to present a prima facie case of discrimination and had not adduced sufficient evidence to support discovery, this court, on November 16, 2001, issued a Memorandum/Order, denying in part, and granting in part, the defendants' October 9 motion for discovery:

> Pursuant to the opinion and order issued from the bench on November 16, 2001, the defendants' Motion to Compel Discovery from Government of Information to Disclose and/or Determine the Impermissible Considerations of Race in the Decision by the Department of Justice to Select These Three Defendants to Face the Death Penalty is DENIED IN PART and GRANTED IN PART. With respect to those requested discovery items which are targeted at the overall application of the federal death penalty in the country as a whole, reflected in paragraphs a-e of the above-mentioned motion, defendants' request for discovery is DENIED. With respect to those requested discovery items which are targeted at decisions by the United States Attorney's Office for the Eastern District of Pennsylvania to seek or to not seek the federal death penalty, reflected in paragraphs f-g of the above-mentioned motion, defendants' request for discovery is GRANTED.
>
> Counsel for defendants and for the United States are encouraged to discuss the materials which the government is to produce, giving defense counsel the opportunity to clarify defendants' requests, on the one hand, and counsel for the United States the opportunity to raise issues of privilege, on the other hand. If counsel cannot agree on the production of materials that are listed in paragraphs f-g of the defendants' motion to compel discovery, they are to submit further motions and accompanying memoranda to the court for consideration.

*United States v. Llera Plaza,* Cr. No. 98–362 mem./order (E.D.Pa. Nov. 16, 2001). This court granted defendants' discovery request with respect to information pertaining to the decisions of the United States Attorney for the Eastern District of Pennsylvania to seek or not seek the death penalty in death-eligible cases because there appeared to be a degree of parallelism between *Merlino* and the case at bar—namely, that some defendants in both cases were charged with multiple murders and faced 18 U.S.C. § 1959 death-eligible charges. This degree of parallelism, combined with the racial/ethnic differences between the defendants in *Merlino* and in the case at bar, constituted, in the court's view, "some evidence ... [of] discriminatory effect and discriminatory intent" which, *Armstrong* suggested, was the predicate for discovery. 517 U.S. at 468, 116 S.Ct. 1480 (quotations omitted).

5. On November 30, 2001, the government filed a Motion to Reconsider Order Requiring Government to Produce Prose-

cution Memoranda and Other Material Concerning Capital Cases in This District.

6. Argument on the government's motion to reconsider was had on December 10, 2001. The government's motion was denied from the bench. Further, at the December 10 hearing, the court suggested that counsel jointly explore the possibility of government disclosure to the defendants of certain documents, regarded by the government as privileged, bearing on the *Merlino* case and the case at bar.

7. At a court session on December 12, 2001, the government represented that it would disclose to the defendants certain non-privileged items but would not disclose to the defendants, or to the court *in camera*, any materials regarded by the government as privileged.

8. On December 13, 2001, the defendants filed a Motion for Sanctions for Failure to Provide Discovery Pertaining to Defendants' Motion to Bar the Death Penalty Due to Racial Discrimination.

9. On December 14, 2001, this court entered a Memorandum/Order directing the government to produce to the court, under seal, for its *in camera* inspection, certain of the materials relating to the case at bar and the *Merlino* case, specified in the court's November 16 Memorandum/Order, which the government regarded as privileged. The December 14 Memorandum/Order also denied the defendants' December 13 motion for sanctions. The text of the December 14 Memorandum/Order is as follows:

1. On October 9, 2001, the defendants submitted a Motion to Compel Discovery from Government of Information to Disclose and/or Determine the Impermissible Considerations of Race in the Decision by the Department of Justice to Select These Three Defendants to Face the Death Penalty. On November 16, 2001, this Court issued a bench opin-

ion denying in part and granting in part the defendants' motion. The Motion to Compel Discovery was granted with respect to requested discovery items referencing decisions by the United States Attorney's Office for the Eastern District of Pennsylvania to seek or to not seek the death penalty in death-eligible cases, reflected in paragraphs (f) and (g) of the Motion to Compel Discovery:

f. Provide a list of all capital eligible cases (including the name of the defendant(s)) since 1994, including the race of the defendant(s), the victim(s), and the type of crime(s), prosecuted by the United States Attorney's Office for the Eastern District of Pennsylvania.....

g. As to the list provided in paragraph [ (f) ], provide a statement for each referenced case includ[ing]: (1) the recommendation of the United States Attorney's Office for the Eastern District of Pennsylvania either for or against authorization for the death penalty; (2) the decision of the Attorney General either for or against authorization for the death penalty as to each such case; (3) any request(s) by the United States Attorney's Office for the Eastern District of Pennsylvania to seek reconsideration from the Attorney General either for or against the authorization of the death penalty; and (4) a copy of the prosecution memoranda provided to the Department of Justice Capital Crimes Review Committee.

A memorandum/order dated November 16 confirmed the bench opinion, emphasizing that the parties were to jointly discuss the production of materials, and that they were to submit further motions and memoranda where agreement was not possible.

2. The government subsequently submitted a Motion to Reconsider Order Requiring Government to Produce Prosecution Memoranda and Other Material Concerning Capital Cases. Submitted with the Motion to Reconsider was a partial listing of capital eligible cases prosecuted in this District, which included the race of the defendant(s) and victim(s), the capital charge(s), and whether a section 3593(a) notice (Notice of Intent to Seek the Death Penalty) was filed, in partial compliance with the November 16 memorandum/order insofar as it addressed the information requested by defendants in the first sentence of paragraph (f) of their Motion to Compel Discovery.

3. On December 10, 2001, argument was had on the government's Motion to Reconsider. Following the argument, the court, from the bench, denied the Motion to Reconsider. In addition, the court noted its understanding that the information sought by defendants in paragraphs (g)(1) and (2) of their Motion to Compel Discovery was information of a public character, since such information, as it related to each judicial district for all cases from 1995 to July of 2000, including the Eastern District of Pennsylvania, had already been published by the Department of Justice in its September 12, 2000 report on the federal death penalty. With respect to item (g)(3) of the Motion to Compel Discovery, the court concluded that the requested information would be unlikely to provide any useful information, and hence that it would not be necessary for the government to produce this information.

4. Further, at the December 10 hearing, the court noted that the fourth item in paragraph (g) of the defendants' Motion to Compel Discovery might well provide some useful information, but that it was privileged material. After again recommending that the parties discuss the possibility of coming to a mutual understanding with respect to the defendants' discovery request, the court suggested that, with respect to the paragraph (g) privileged material, the government consider disclosure to the defendants, and to the court, of certain items bearing on the case at bar and on *United States v. Merlino,* Cr. No. 99–363. The items the court suggested disclosure of were items constituting portions of the prosecution memoranda submitted by the United States Attorney's Office to the Department of Justice for each of the defendants charged with death-eligible offenses in the case at bar and in *Merlino,* pursuant to section 9–10.040 of the United States Attorneys' Manual.[2] Specifically, the court suggested disclosure of "(iii) ... evidence relating to any aggravating or mitigating factors, [and] (iv) the defendant's background and criminal history." United States Dep't Justice, U.S. Attorneys' Manual, 9–10.040 (1998).

5. On December 12, 2001, the government represented in court that it would

---

**2.** Section 9–10.040 states:

In all cases in which the United States Attorney intends to charge a defendant with an offense subject to the death penalty, whether or not the United States Attorney recommends the filing of a notice of intent to seek the death penalty, the United States Attorney shall prepare a "Death Penalty Evaluation" form and a prosecution memorandum. Following (i) an introduction, the prosecution memorandum should include a comprehensive discussion of (ii) the theory of liability, (iii) the facts and evidence, including evidence relating to any aggravating or mitigating factors, (iv) the defendant's background and criminal history, (v) the basis for Federal prosecution ..., and (vi) any other relevant information.
United States Dep't Justice, U.S. Attorneys' Manual, 9–10.040 (1998).

complete paragraphs (f) and (g)(1)-(2) of the defendants' discovery request. The government completed these requests by way of letter dated December 13, 2001. On December 12, the government also stated that, with respect to the privileged materials whose disclosure the court had suggested on December 10, the government would (a) not make disclosure to defendants and (b) not submit the materials to the court for *in camera* review.

6. Pursuant to the memorandum/order of November 16, 2001, and the order of December 12, 2001, denying the government's Motion to Reconsider, the government is hereby ORDERED to submit, under seal, for *in camera* review, the portions of the death penalty prosecution memoranda identified in paragraph 4, *supra*, for the case at bar and for *Merlino*. These materials shall be submitted for *in camera* review by the end of the business day on Tuesday, December 18, 2001.

7. On December 13, 2001, defendants filed a Motion for Sanctions for Failure to Provide Discovery Pertaining to Defendants' Motion to Bar the Death Penalty Due to Racial Discrimination. As of today, December 14, 2001, the government has (1) provided discovery that this court has heretofore *ordered* disclosure of, and (2) has declined to provide discovery of materials this court *suggested*, but did not *order*, disclosure of. Accordingly, the government has not, as of today, failed to comply with any order of this court. Therefore, the defendants' Motion for Sanctions is DENIED.

*United States v. Llera Plaza*, Cr. No. 98–362 mem./order (E.D.Pa. Dec. 14, 2001).

10. On December 19, 2001, and December 26, 2001, the government submitted, under seal, for the court's *in camera* inspection, the materials the government was directed to produce in the December 14 Memorandum/Order.

11. The materials submitted by the government, under seal, for *in camera* inspection have now been reviewed by the court. The government will not be directed to turn over any of the submitted materials to the defendants because, in the court's judgment, the materials contain no evidence supportive of the defendants' Motion to Bar the Death Penalty. There is nothing in the materials from which an inference could be drawn that the decision of the United States Attorney for the Eastern District of Pennsylvania to recommend to the Department of Justice that it be given authority to seek the death penalty for the three defendants in the case at bar took into account—let alone was in any degree animated by—the race or ethnicity of the defendants. Nor is there anything in the materials from which an inference could be drawn that the decision of the United States Attorney for the Eastern District of Pennsylvania to recommend to the Department of Justice that the death penalty not be sought for any of the *Merlino* defendants took into account—let alone was in any degree animated by—the race or ethnicity of the *Merlino* defendants.

12. With respect to the defendants' central contention—that race (or ethnicity) is the only factor differentiating the case at bar from *Merlino*—the following observations are in order:

■ A. As noted in Paragraph 2, *supra*, the government contends that it is inapposite to single out another case in this district—*Merlino*—for comparison with the case at bar, as distinct from comparing the case at bar with any or all of the scores of federal criminal prosecutions for death-eligible offenses in other districts. The contention is, in the court's view, unpersuasive. In the case at bar, intra-district comparison seems appropri-

ate since it focuses on the prosecutorial policies pursued by a single federal prosecutorial office—the Office of the United States Attorney for the Eastern District of Pennsylvania. It is true, of course, that a recommendation made by a United States Attorney of whatever district to seek, or not seek, the death penalty only has operative effect if approved by the Attorney General. But the correlation between recommendations of United States Attorneys and decisions of the Attorney General is so high—in the range of 91% (U.S. Dep't Justice, Survey of the Federal Death Penalty System (1998–2000), at 43, T–328–31 (Sept. 12, 2000))—that it makes good sense to regard the practices of a particular district as the primary area of inquiry.

■ B. As explained at the outset of this opinion, the government contends that the similarity perceived by the defendants between the case at bar and the *Merlino* case is illusory. The government points out various differentiating features, some of which are mentioned in the excerpts from the government's memorandum of opposition quoted in Paragraph 2, *supra.* The differentiation most stressed by the government is that, in *Merlino*, the actor regarded by the government as most culpable—Ralph Natale, the erstwhile Philadelphia mob boss, who allegedly authorized each of the charged killings—was a person with respect to whom the government, in exchange for his cooperation, had agreed not to seek the death penalty. This meant that, had the death penalty been sought for any of the *Merlino* defendants, that defendant would, in the event the case

reached the sentencing phase, have been able to establish, in mitigation, the statutory mitigating factor that "[a]nother defendant or defendants, equally culpable in the crime, will not be punished by death." 18 U.S.C. § 3592(a)(4). In the case at bar, there are some persons other than the three defendants at bar who are alleged to have played roles in certain of the charged murders; however, the government contends, no other murder participant is alleged to have played a dispositive role remotely comparable with that attributed to Ralph Natale. This court agrees that the Natale factor clearly differentiates *Merlino* from the case at bar and, standing alone, would sufficiently explain a prosecutorial decision not to seek the death penalty in the *Merlino* case.[3]

13. It follows from the foregoing that the court finds no evidence that the constitutionally forbidden element of race/ethnicity played any role in (1) the recommendation of the United States Attorney for the Eastern District of Pennsylvania that the death penalty be sought in the case at bar, or (2) the recommendation of the United States Attorney for the Eastern District of Pennsylvania that the death penalty not be sought in *Merlino*. Accordingly, the defendants' Motion to Bar the Death Penalty will, in the order accompanying this opinion, be denied.

---

**3.** Other differentiating factors noted by the government, *supra,* paragraph 2 (e.g., the mistaken-identification killing of Ricky Velez in Puerto Rico, and the killing in Philadelphia of seventeen-year old Luis Garcia, a nephew of Jorge Martinez who had no connection with criminal activity of any kind) also might reasonably have led a prosecutor to regard the murders in the case at bar as even more grave than the murders in *Merlino*. In the court's view, the Natale factor—which is one of statutory dimension—would seem a more compelling differentiation, but of course it is not a court's function to monitor prosecutor discretion except at the boundaries of constitutionality.